IN THE DISTRICT COURT OF PAYNE COUNTY
STATE OF OKLAHOMA

IN THE DISTRICT COURT OF
Payne County, Oklahoma
FILED
NOV 21 2016
LORI ALLEN, Court Clerk
By: _____ Deputy

| | |
|---|---|
| JAMES PAUL GILL and LORI ANN GILL, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CJ-2016-531 ) |
| BIOMET ORTHOPEDICS, LLC, BIOMET, INC., BIOMET MANUFACTURING CORP., BIOMET US RECONSTRUCTION, LLC, and DOES 1 THROUGH 15, | ) ) ) ) ) |
| Defendants. | ) ) |

## PETITION

Plaintiffs, JAMES PAUL GILL and LORI ANN GILL, (referred to hereinafter collectively as "Plaintiff[s]"), by and through undersigned counsel, bring this petition against Defendants BIOMET ORTHOPEDICS, LLC, BIOMET, INC., BIOMET MANUFACTURING CORP., BIOMET US RECONSTRUCTION, LLC, and DOES 1 THROUGH 15, and allege as follows:

### INTRODUCTION AND SUMMARY OF ACTION

1.  This is a product liability case involving a defective hip implant system. Plaintiff JAMES PAUL GILL had a Biomet M2A Metal-on-Metal Hip System ("Hip System") implanted in his left hip. The Hip System suffers from defects that cause excessive amounts of cobalt and chromium to corrode and wear from the surfaces of the acetabular cup, the femoral head, and the taper sleeve, which in turn causes the hip implant to fail and the surrounding tissue and bone to die.

2.  As a result of these defects, Plaintiff's Hip System has an unreasonably high risk of failing in his body, causing severe loosening of the device and/or toxic levels of cobalt and

chromium, tissue and bone destruction, and the need for Plaintiff to undergo complicated and risky surgeries to remove and replace the defective implant.

## PARTIES

3. Plaintiffs, JAMES PAUL GILL and LORI ANN GILL, are citizens of the State of Oklahoma and resides in Payne County.

4. Defendant, BIOMET ORTHOPEDICS, LLC, is, and at all times relevant to this Complaint was, an Indiana limited liability company, with its principal place of business in Warsaw, Indiana. BIOMET ORTHOPEDICS, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of BIOMET, INC., an Indiana corporation with its principal place of business in Warsaw, Indiana.

5. Defendant, BIOMET, INC., is, and at all times relevant to this Complaint was, an Indiana corporation with its principal place of business in Warsaw, Indiana.

6. Defendant, BIOMET MANUFACTURING CORP., is, and at all times relevant to this Complaint was, an Indiana corporation with its principal place of business in Warsaw, Indiana.

7. BIOMET U.S. RECONSTRUCTION, LLC, is, and at all times relevant to this Complaint was, an Indiana limited liability company, with its principal place of business in Warsaw, Indiana. BIOMET U.S. RECONSTRUCTION, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Defendant, BIOMET, INC., an Indiana corporation with its principal place of business in Warsaw, Indiana.

8. Upon information and belief, at all times herein mentioned, the employees of Defendant, its subsidiaries, affiliates, and other related entities, as well as the employees of the Defendant's subsidiaries, affiliates, and other related entities, were the agents, servants and

2

employees of Defendant BIOMET, INC., and at all relevant times, were acting within the purpose and scope of said agency and employment.

9. Whenever reference in this Petition is made to any act or transaction of Defendant, such allocations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew of, performed, authorized, ratified and/or directed such transaction on behalf of Defendant while actively engaged in the scope of their duties.

10. At all times mentioned, each Defendant was the representative, agent, employee, joint-venturer, or alter ego of each of the other entities and in doing the things alleged herein was acting within the scope of its authority as such. Specifically, each Defendant was but an instrumentality or conduit of the other in the prosecution of a single venture, namely the design, promotion, and sale of the Hip System that is the subject of this litigation. Therefore, it would be inequitable for any Defendant to escape liability for an obligation incurred as much for that Defendant's benefit as for the other.

11. The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 15, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names are residents of Oklahoma, agents and/or employees of Defendants Biomet, and are in some manner legally responsible for the events and happenings herein referred to, and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

12. At all times herein alleged, unless specified otherwise, "Defendants" include all herein named Defendants as well as Defendants DOES 1 through 15, inclusive.

13. DOES 1 through 15, and each of them, acted independently of, or jointly with, other Defendants, and are in some manner legally responsible for the events and happenings

herein referred to, and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

14. All Defendants are collectively referred to herein as "Biomet".

## JURISDICTION AND VENUE

15. Plaintiffs allege an amount in controversy in excess of the minimal jurisdictional limits of this Court, and a substantial portion of the events leading to these claims occurred within the State of Oklahoma. Plaintiffs are citizens of the State of Oklahoma and reside in Payne County, Oklahoma.

16. Defendant BIOMET ORTHOPEDICS, LLC is subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 12 O.S. § 137 *et seq.* Because Defendant did (and does) business within the State of Oklahoma and has had continuous and systematic contacts with the State of Oklahoma, has consented to jurisdiction in the State of Oklahoma and/or committed a tort in whole or in part in the State of Oklahoma against Plaintiff as more fully set forth herein. On information and belief, Defendant also advertised in this district, made material omissions and representations in this district, and breached warranties in this district.

17. Defendant BIOMET, INC. is subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 12 O.S. § 137 *et seq.*, because Defendant did (and does) business within the State of Oklahoma and has had continuous and systematic contacts with the State of Oklahoma, has consented to jurisdiction in the State of Oklahoma and/or committed a tort in whole or in part in the State of Oklahoma against Plaintiff as more fully set forth herein.

18. Defendant BIOMET MANUFACTURING CORP. is subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 12 O.S. § 137 *et seq.*, because Defendant did (and does) business within the State of Oklahoma and has had continuous

and systematic contacts with the State of Oklahoma, has consented to jurisdiction in the State of Oklahoma and/or committed a tort in whole or in part in the State of Oklahoma against Plaintiff as more fully set forth herein.

19. Defendant BIOMET U.S. RECONSTRUCTION, LLC. is subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 12 O.S. § 137 et seq., because Defendant did (and does) business within the State of Oklahoma and has had continuous and systematic contacts with the State of Oklahoma, has consented to jurisdiction in the State of Oklahoma and/or committed a tort in whole or in part in the State of Oklahoma against Plaintiff as more fully set forth herein.

20. Based upon information and belief, Defendant also advertised in this district, made material omissions and representations in this district, and breached warranties in this district.

**FACTUAL BACKGROUND**

**A.     The Hip System Is Defective and Was Not Adequately Tested**

21. The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.) In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.



ANTERIOR HIP JOINT

22. A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as "hip implant" in the diagram to the left), (2) a femoral head, (3) a plastic (polyethylene) liner, and (4) an acetabular shell. After the surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

23. The Hip System used in Plaintiff's surgery, described in greater detail below, suffers from a design or manufacturing defect that causes loosening of the device and/or excessive amounts of cobalt and chromium to wear and corrode from the surface of the acetabular cup, from the femoral head, and from the taper adapter. These cobalt and chromium fragments prompt the body to react by rejecting the hip implant. This rejection often manifests with symptoms of pain, looseness, dislocation, and squeaking and popping sounds. Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues and bone to die.

24. The design of the Hip System was not sufficiently tested by Biomet, and it was never approved by the FDA as being safe or effective for the products' intended purpose.

6

25.     On numerous occasions, Biomet met with orthopedic surgeons in cities throughout the United States to promote the Hip Implant. At some or all of these meetings, a representative or representatives of Biomet was present. During these meeting, Biomet assured the orthopedic surgeons that the Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate. Biomet continued to "defend" the Hip Implant even after they became aware of numerous and serious complications with the M2a Magnum Hip System and various related devices. Biomet did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons.

**B.    Biomet Sold the Hip Implant To Plaintiff After It Knew It Was Defective, That It Had Injured Others, And That It Could Injure Him.**

26.     It was not long after Biomet launched the M2a Magnum Hip System that reports of failures began flooding into Biomet. For example, in August 2004, Biomet received a complaint that a patient had to undergo a surgery to remove and replace an M2a Magnum Hip System because it had become loose after only 3 years. Biomet closed its investigation of this complaint.

27.     Biomet would go on to receive hundreds of similar complaints reporting that the M2a Magnum Hip System had failed and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. To date, more than 350 reports of adverse events associated with the M2a Magnum Hip System have been filed with the FDA. By the time Biomet sold the Hip System to Plaintiff, numerous reports had been filed with the FDA reporting an adverse event associated with the M2a Magnum Hip System and other related systems. Consequently, Biomet was fully aware that some of its Hip Systems were defective and that dozens of patients already had been injured by that defect. Based on this information, Biomet should have recalled the metal Hip System before it was sold to Plaintiff. At minimum, Biomet should have

stopped selling the defective implant when it became aware that it had catastrophically failed in several patients.

28.     As numerous failures of Hip Implant systems were reported to Biomet, it continued to actively promote, market and defend the defective products. For example, Biomet published marketing brochures touting the safety and durability of metal-on-metal implants and specifically, the M2a Magnum Hip System. These brochures were given to doctors around the world to encourage them to use the M2a Magnum Hip System.

29.     Biomet's reason to conceal the defect in its M2a Magnum Hip System is clear. Hip implant sales are critically important to Biomet. During the time period relevant to this Complaint, Biomet's management was trying to make Biomet look appealing to investors. They ultimately were purchased by a private equity firm in 2007 for $10 billion. More recently, in April 2014, managers at Biomet announced yet another sale, this time to competitor Zimmer Holdings, Inc., in a deal valued at $13.35 billion. Throughout this time period, Biomet was faced with a critical defect in one of its most profitable hip implant systems. The last thing Biomet wanted to do was to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery. Focused on corporate profits, and at the expense of patient safety, Biomet decided that it would continue to promote, market, and sell the various Hip Systems despite the fact that it knew the product was defective. To this day, Biomet continue to sell these defective implants to unsuspecting patients without any warning about the risks or the failures that have been reported to the company.

## PLAINTIFF'S BIOMET M2A METAL-ON-METAL PROSTHESIS SYSTEM IMPLANTS FAILED CAUSING PLAINTIFF TO NEED REVISION SURGERIES

30. On August 17, 2009, Plaintiff JAMES PAUL GILL underwent left total hip replacement surgery performed by Dr. Michael O. Williams at Northwest Surgical Hospital in Oklahoma City, Oklahoma. Plaintiff was implanted with a Biomet M2A metal-on-metal prosthesis. By this time, reports of adverse events associated with the M2a Magnum, M2a 38 and other Biomet devices had been filed with the FDA and Biomet knew that the product was subject to failure due to excessive metal-on-metal wear and other factors. But Biomet refused to disclose that information to Plaintiff, his physicians, or the public.

31. Instead, Biomet misrepresented to Plaintiff and his orthopedic surgeon that the Hip System was safe and effective. In reliance on these representations, Plaintiff's orthopedic surgeon made the decision to use the Hip System. If it were not for the misrepresentations made by Biomet, Plaintiff's orthopedic surgeon would not have used the Biomet Hip System.

32. As a result of the defective design, manufacture and composition of the Hip System, and its accompanying warnings and instructions (or lack thereof), Plaintiff's hip implant has caused him severe pain and he was forced to undergo costly and painful revision surgery on September 7, 2016, on the left side, performed by Dr. Paul Maitino at Community Hospital in Oklahoma City, Oklahoma. During the surgery, Dr. Maitino noted toxic levels of cobalt and chromium and significant amounts of metallosis. Plaintiff then was forced to undergo a second revision on September 9, 2016.

33. Having to go through a first and second revision surgery has subjected Plaintiff to much greater risks of future complications than he had before the revision surgery. While recuperating from the aforestated revision surgeries, Plaintiff developed a severe infection related thereto. Plaintiff currently has a knee revision surgery scheduled for November 28, 2016, believed

to be related to the implantation of the Biomet Hip System, the subject of this Petition. Plaintiff's total knee replacement took place on October 21, 2015. Complications of the knee implant are attributed to the development of metallosis from his initial hip arthroplasty and subsequent revision surgeries, the subject of this petition, and the development of nickel allergies thereafter.

34. Several studies have found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery. In one study conducted by Charlotte Phillips and her colleagues at Brigham and Women's Hospital in Boston, 14.4 percent of patients who underwent a revision surgery suffered from a dislocation compared with 3.9 percent of patients who underwent an original hip replacement surgery. In other words, hip replacement patients who have undergone a revision surgery are almost four times more likely to suffer from a hip dislocation than those who have not. *(Phillips CB, et al. Incidence rates of dislocation, pulmonary embolism, and deep infection during the first six months after elective total hip replacement. American Journal of Bone and Joint Surgery* 2003; 85:20–26.)

35. As a direct and proximate result of the failure of his defective Hip Systems and Biomet's wrongful conduct, Plaintiff sustained and continues to suffer economic damages (including lost wages, medical and hospital expenses), severe and possibly permanent injuries, pain, suffering and emotional distress. As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial.

## COUNT I
### (Strict Product Liability)

36. Plaintiffs incorporate all of the preceding paragraphs of this Complaint as if fully set forth here and further allege as follows.

37. Biomet designed, manufactured, promoted, distributed, marketed, and sold the Hip System.

10

38. At all times material hereto, the Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Biomet was expected to reach, and did reach, prescribing physicians and consumers, including Plaintiff and his physician, without substantial change in the condition in which it was sold.

39. At all times material hereto, the Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Biomet was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce. Such condition included, but is not limited to, one or more of the following particulars:

   (a) When placed in the stream of commerce, the Hip System contained manufacturing defects, subjecting Plaintiff and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

   (b) When placed in the stream of commerce, the Hip System contained unreasonably dangerous design defects and was not reasonably safe for the intended use, subjecting Plaintiff and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

   (c) The Hip System was insufficiently tested; and

   (d) The Hip System was not accompanied by adequate instructions and/or warnings to fully inform Plaintiff and his physicians of the full nature or extent of the risks associated with its use.

40. Biomet knew or should have known of the dangers associated with the use of the Hip System, as well as the defective nature of the Hip System. Despite this knowledge, Biomet

11

continued to manufacture, sell, distribute, promote and supply the Hip System so as to maximize sales and profits at the expense of the public health and safety. Biomet's conduct was done in conscious disregard of the foreseeable harm caused by the Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

41. Plaintiff and his surgeon used the Hip System as directed for its intended purpose.

42. At all times herein mentioned, the Hip System was defective, and Biomet knew that it was to be used by the user without inspection for defects therein. Moreover, at the time of the use of the subject products, neither Plaintiff nor his physician knew or had reason to know of the existence of the aforementioned defects. Neither Plaintiff nor his physicians could have discovered the defects in the Hip System through the exercise of reasonable care.

43. The Hip System had not been materially altered or modified prior to its implantation in Plaintiff.

44. As a direct and proximate result of the failure of the defective Hip System, Plaintiff suffered the injuries and damages as described herein.

## COUNT II
### (Negligence)

45. Plaintiffs incorporate all of the preceding paragraphs of this Complaint as if fully set forth here and further allege as follows.

46. At all times herein mentioned Biomet had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

47. Biomet maliciously, recklessly and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Hip System.

48. Biomet, maliciously, recklessly and/or negligently made misrepresentations about the safety and effectiveness of the Hip System to Plaintiff and his orthopedic surgeon. In reliance on these misrepresentations, Plaintiff's orthopedic surgeon decided to use the Hip Implant in Plaintiff's surgery. If it was not for the misrepresentations by Biomet, Plaintiff's orthopedic surgeon would not have used the Hip System in Plaintiff's surgery.

49. Biomet maliciously, recklessly and/or negligently failed in their duty to exercise reasonable care in the provision of an adequate warning to Plaintiff and his physicians as to the risks of the Hip System.

50. Biomet maliciously, recklessly and/or negligently failed to exercise reasonable care in the post-marketing warnings as to the risks of the Hip System when they knew or should have known of said risks.

51. Biomet's conduct was done in conscious disregard of the foreseeable harm caused by the Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

52. As a result of Biomet's wrongful conduct, Plaintiff suffered injuries and damages as alleged herein.

## COUNT III
### (Breach of Implied Warranties)

53. Plaintiffs incorporate all of the preceding paragraphs of this Complaint as if fully set forth here and further allege as follows:

54. Prior to the time that the Hip System was used by Plaintiff, Biomet impliedly warranted to Plaintiff and his physicians that the Hip System was of merchantable quality and safe and fit for the use for which it was intended.

55. Plaintiff's physicians were and are unskilled in the research, design and manufacture of the Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Biomet in using the Hip System.

56. The Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Biomet, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

57. Biomet, by selling, delivering and/or distributing the defective Hip System to Plaintiff, breached the implied warranty of merchantability and fitness and caused Plaintiff pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

58. As a result of the aforementioned breach of implied warranties by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## COUNT IV
### (Breach of Express Warranty)

59. Plaintiffs incorporate all of the preceding paragraphs of this Complaint as if fully set forth here and further allege as follows:

60. At all times herein mentioned, Biomet expressly warranted to Plaintiff and his physicians, by and through statements made by Biomet or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned Hip System was safe, effective, fit and proper for its intended use.

61. In utilizing the aforementioned Hip System, Plaintiff and his physician relied on the skill, judgment, representations and foregoing express warranties of Biomet.

62. Said warranties and representations were false in that the aforementioned Hip System was not safe and was unfit for the uses for which it was intended.

63. As a result of the foregoing breach of express warranties by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## COUNT V
### (Violation of Oklahoma Consumer Protection Act)

64. Plaintiffs reallege and reincorporate each of the allegations above as if set forth fully herein.

65. Defendants are liable to the Plaintiff pursuant to the Oklahoma Consumer Protection Act, 15 O.S. 2001 § 751 *et seq.* ("the Act"). As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained and will continue to sustain damages consisting of past and future lost wages, medical, permanency and incidental expenses, according to proof; past and future general damages for pain and suffering, according to proof.

66. In the course of the transactions that are the subject of this lawsuit, Defendants engaged in the following unfair and deceptive acts, methods or practices:

    a. Causing a probability of confusion or misunderstanding about the source, sponsorship, approval, or certification of its services;

    b. Representing that its services have sponsorship, approval, characteristics, and benefits that they do not have;

    c. Representing that its services were of workmanlike quality when, in fact they were not;

d. Causing a probability of confusion or of misunderstanding concerning Plaintiff's legal rights, obligations, or remedies;

e. Failing to reveal material facts, the omission of which tended to mislead or deceive Plaintiff, and which could not reasonably be known by the Plaintiff;

f. Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, when Defendant knew or had reason to know that the statement was not true;

g. Entering into a consumer transaction in which Plaintiff purportedly waived a right, benefit, or immunity provided by law, without conspicuous disclosure and without Plaintiff's specific consent;

h. Failing to provide promised benefits, including benefits arising by operation of law;

i. Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner; and

j. Such other and further acts or omissions as may be determined through further investigation and discovery.

67. Upon information and belief, the violations described above were not the result of *bona fide* error, in that Defendant did not have procedures in place designed to prevent injury to Plaintiff from their defective product, the defectiveness of which the Defendant had reason to know

and Defendant has engaged in similar misconduct in connection with sales of other defective hip replacement implants.

68. As a result of the Defendants' actions described above, Plaintiff has suffered a loss within the meaning of the Act and is also entitled to statutory damages and attorney fees as provided in the Act.

69. Plaintiff did not become aware of the connection and/or nexus between his injuries and the above-described negligent design of the Biomet Hip System until his first revision surgery.

## COUNT VI
### (Loss of Consortium)

70. Plaintiffs reallege and reincorporate each of the allegations above as if set forth fully herein.

71. Because of Defendants' conduct as described above, and the corresponding injuries sustained by Plaintiff's spouse, Plaintiff LORI ANN GILL is entitled to recover for the loss of services, assistance, aid, society, companionship, and conjugal relationship between her and her husband JAMES PAUL GILL.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek judgment in his favor as follows:

1. Awarding actual damages to Plaintiff incidental to the purchase and use of the Biomet M2A Metal-on-Metal Hip System in an amount to be determined at trial;

2. Awarding the past and future costs of treatment for Plaintiff's injuries caused by the Biomet M2A Metal-on-Metal Hip System;

3. Awarding injunctive relief, including disgorgement of all profits made from and monies paid for the Biomet M2A Metal-on-Metal Hip System;

4. Awarding damages for Plaintiff's physical pain and suffering;

5. Awarding damages for Plaintiff's mental and emotional anguish;

6. Awarding punitive and exemplary damages in an amount to be determined at trial;

7. Awarding pre-judgment and post-judgment interest to Plaintiffs;

8. Awarding damages for disability and disfigurement

9. Awarding the costs and expenses of this litigation to Plaintiffs;

10. Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

11. For such further relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all claims and issues so triable.

DATED: This 18th day of November, 2016.

**ATTORNEY LIEN CLAIMED**

Respectfully Submitted:

**MATTHEW J. SILL**

Matthew J. Sill, Bar No. 21547
14005 N. Eastern Ave.
Edmond, OK 73013
Telephone: (405) 509-6300
Facsimile: (405) 509-6268
matt@sill-law.com

*Counsel for Plaintiffs*